Rouse vs. Dean.

ROUSE vs. DEAN.

Under our statute, a mere entry upon land, and cutting timber, is not of itself sufficient to sustain an action of forcible entry and detainer.

APPEAL from Platte.

PETER H. BURNETT, for the Appellant, insists upon the following:

POINTS.

1. That the court erred in overruling the motion of the defendant to dismiss the suit.

2. That the court erred in giving the plaintiff's instructions.

3. That the court erred in refusing defendant's instructions.

4. That the court erred in overruling the motion for a new trial.

KIRTLY & REED, for Appellee.

McBRIDE, J., delivered the opinion of the court.

This was an action of forcible entry and detainer, brought before a justice of the peace, where the plaintiff having obtained a judgment, the defendant moved it into the circuit court by appeal, and the judgment being against him in that court, he has brought his case into this court by appeal from the judgment of the circuit court.

The evidence saved by the bill of exceptions shows, that the defendant having made an improvement on the public lands, in the fall of 1838, sold the same to Robert Shaw, for the sum of $200, covenanting in writing under the penalty of $1000, that he would use his utmost exertions to prove up a pre-emption to the land for the benefit of Shaw. Shaw took possession under his purchase, occupied it for a short time, when he sold to his brother, who shortly thereafter went to Kentucky on a visit, leaving Shaw in possession, with instructions to do what he thought best with the premises. In 1839, the public surveys were made in that district, when it was found that a portion of an improvement made by John Pace, would fall upon the quarter section, embracing the improvement in question. An arbitration was had between Shaw and Pace, by which it was agreed that Pace should occupy the field which he had made, for two years, with the privilege at the expiration of that period, to remove his rails enclosing the field, and after the public sales, that Pace should have 15 acres of the quar-

ter section, so as to embrace his field, the line to run parallel with the line of the said quarter section, with the distinct understanding, that Pace was not to put a tenant on said strip of land. Afterwards, Reuben Arnold commenced an improvement on the same quarter section, and Shaw was compelled to pay him $70 for the relinquishment of his right. Shaw having been thus harrassed by Pace and Arnold, and being threatened by the defendant that he would again go on the land, he in the absence of his brother, "to get shut of any further trouble, told the plaintiff to go on the place and hold it, and if he never was able to pay for it, that he, Shaw, would rather that it should be given to him, than that his brother should be rascaled out of it."

On the 14th May, 1840, the plaintiff took possession of the place, and has resided there ever since—is a housekeeper and the head of a family. But about one month prior, the defendant, who is also a housekeeper, and the head of a family, also moved upon the same quarter section, and has resided there ever since.

A short time before the institution of this suit, the defendant said he had sold his right to the improvements to Shaw, and had no further claim, but that he intended to hold the land if he could. He cut timber on the quarter section, nearly midway from north to south. Notice was given him to leave, before the commencement of the action.

Such being the substance of the evidence, upon which the verdict was rendered, it is apparent that the defendant has acted in very bad faith, and that upon the merits of the case, he can never hope for any favor, from any jury of the country. Having once sold his interest for the sum of $200—binding himself by his obligation under seal, "to use all endeavors in his power to obtain a pre-emption for the said Shaw," whose money he had pocketed, he is found a short time thereafter attempting by his wrongful and fraudulent act, to defeat the claim of Shaw. Under such circumstances, it is very great presumption in him, to expect that a jury who will look at "the very right of the case," will sustain him in his pretended claim.

On the trial in the circuit court, several instructions were asked on both sides, some of which were irrelevant, and others embraced mere abstract principles, and might have been given or refused, at the pleasure of the court, without the danger of influencing improperly the jury, and for the giving or refusing of which this court would not interfere. But the first one asked by the plaintiff, and given to the jury by the court, which goes to the right of the present form of the action, we feel constrained to notice. It is as follows :

"If the jury believe from the evidence, that the plaintiff was in the

actual possession of the whole or part of the quarter section of land in controversy, and that defendant entered upon that part and cut wood or otherwise committed waste, without the consent and against the will of the plaintiff, they must find the defendant guilty, as to that part of the land."

The foregoing instruction assumes that the entry upon land, and the cutting of timber, constitutes a forcible entry and detainer, whereas the statute under the title of "Forcible entry and detainer," R. C. 277, declares that, "if any person shall enter upon or into any lands, tenements, or other possessions, and detain and hold the same with force or strong hand, or with weapons, or by breaking open the doors or windows, or other part of a house, whether any person be in it or not, or by threatening to kill, maim, or beat the party in possession, or by such words or actions as have a natural tendency to excite fear or apprehension of danger, or by putting out of doors, or by carrying away the goods of the party in possession, or by entering peaceably and then turning out by force, or frightening by threats or other circumstances of terror, the party out of possession, in such case the person so offending, shall be deemed guilty of forcible entry and detainer, within the meaning of this act."

The hypothesis in the instruction does not come within the definition of the act, and would not consequently subject the defendant to the proceedings had against him in this case—it would only constitute him a trespasser at most. We think therefore, that the instruction should not have been given; and the other members of the court concurring in reversing the judgment, it will be reversed and the cause remanded.